IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

BRANDY BRAA,

        Plaintiff,

    v.

COSTCO WHOLESALE CORPORATION,
RYAN WATKINS, CHRISTOPHER
BOLVES, and JAMES HORNIMAN,

        Defendants.

_____

**OPINION & ORDER**

Case No. 6:21-cv-00684-MC

**MCSHANE, Judge**:

      Plaintiff Brandy Braa brings this disability discrimination action against her former employer, Defendant Costco. Plaintiff alleges Costco failed to accommodate her disability, unlawfully terminated her, and retaliated against her in violation of the Americans with Disabilities Act ("ADA") and Oregon law. Second Am. Compl. ¶¶ 24–49, 54–61, ECF No. 28.[1] She also asserts an aiding and abetting claim against individual Defendants Ryan Watkins, Christopher Bolves, and James Horniman under Oregon law. *Id.* ¶¶ 50–53. Defendants move for summary judgment on all claims. Because there are disputed issues of material fact, Defendants' Motion for Summary Judgment, ECF No. 41, is DENIED.

---

[1] Plaintiff conceded her claim for wrongful discharge. *See* Pl.'s Resp. to Defs.' Mot. Summ. J. 2, ECF No. 53. Summary judgment is therefore granted on that claim.

## BACKGROUND

Plaintiff began working for Costco as a part-time cashier assistant in 1999. Owens Decl.,

Ex. 8, at 39, 41–42, ECF No. 55. In 2004, she transferred to Costco's warehouse in Albany,

Oregon and began working as a part-time refund cashier in the membership department. *Id.* at

47–48. Her duties included processing refunds, signing people up to become Costco members,

and answering questions about membership and refunds. *Id.* at 49–50.

Plaintiff was rear-ended in a car accident in September 2012, which led to her

experiencing pain in her neck, arm, back, and shoulder, as well as migraines *Id.* at 65–69, 78.

In 2015, Plaintiff asked Costco to accommodate permanent medical restrictions stemming from

her pain and migraines. *Id.* Ex. 12, at 1–6.[2] Costco agreed to accommodate Plaintiff's restrictions

of working no more than six hours per day, with three or four longer shifts a month. *Id.* Ex. 11, at

29. From then until 2017, Costco accommodated Plaintiff's documented restrictions, and also

regularly scheduled her to work only four days per week. *Id.* Ex. 8, at 195–96.

Defendant Ryan Watkins took over as general manager of the Albany warehouse in

August 2016. Watkins Decl. ¶ 2, ECF No. 46. In 2017, Costco began implementing a new policy

that all part-time employees be regularly scheduled to work five days a week. *Id.* ¶ 12. Watkins

informed Plaintiff that she would need to be available to work five days a week, and

management began scheduling her accordingly. *Id.* ¶ 24; Second Watkins Decl. ¶ 7, ECF No. 62.

Plaintiff objected, stating that her medical restrictions permitted working only four days per

week. Watkins Decl. ¶ 24; Owens Decl. Ex. 8, at 225–26, 231. Watkins requested updated

medical restrictions from Plaintiff, which she provided. Watkins Decl. ¶ 24–25. Plaintiff's doctor

limited her to working no more than six hours per day and four days per week. *Id.* ¶ 25. Costco

---

[2] The record contains disputed facts regarding Plaintiff's medical restrictions and the accommodations Costco offered in 2015.

held a job assessment meeting in July 2017 to discuss possible accommodations for Plaintiff in light of her permanent restrictions. Owens Decl. Ex. 8, at 222, 226, 242–43; Ex. 11, at 32–36. At the meeting, Costco determined that it was unable to accommodate Plaintiff's scheduling restrictions in the refund cashier position, explaining that Costco may need Plaintiff to work a fifth day or an eight-hour shift depending on the membership department's needs. *Id.* Ex. 11, at 33. Costco instead offered Plaintiff reassignment to positions in larger departments. *Id.* at 34–36. Plaintiff refused the reassignment offers because, although her restrictions did not include physical limitations, she believed she could not complete the more physically intensive tasks of the alternate positions. *Id.* Because the parties could not come up with a mutually agreeable accommodation or reassignment, Plaintiff was placed on leave and given an opportunity to provide updated restrictions. *Id.* at 35.

Over a year later, on December 28, 2018, Plaintiff met with Costco to review an updated set of restrictions from September 2018. Watkins Decl., Exs. 9–10. Plaintiff's doctor again limited her to six-hour shifts four days a week, and further restricted Plaintiff to 19 pounds of pushing and pulling and 15 pounds of lifting and carrying. *Id.* Costco determined that Plaintiff could not perform the essential functions of the refund cashier position. *Id.* Exs. 10–11. A month later, Plaintiff again provided updated restrictions, which included the same availability and push/pull restrictions as her previous request, but allowed lifting up to 50 pounds. *Id.* Ex. 12. In April 2019, Watkins explained that because her restrictions from both September 2018 and January 2019 do not allow pushing and pulling more than 19 pounds, Plaintiff remained unable to perform the essential functions of the refund cashier position. *Id.* Ex. 13.

Plaintiff continued corresponding with Costco regarding its accommodation denials and requesting to be placed back in her job as a refund cashier. *See* Owens Decl. Ex. 11, at 40–45,

190–91; Ex. 12, at 14. In November 2019, Defendant James Horniman, an assistant general manager, reiterated that Plaintiff remained unable to perform the essential functions of a refund cashier due to her 19-pound push and pull limitation. *Id.* Ex. 12, at 16–17. Horniman also informed Plaintiff that Costco would be ending her employment because she exceeded the company's one-year leave policy. *Id.* at 17. Plaintiff was given the opportunity to resign. *Id.*

Plaintiff provided a final set of updated restrictions dated December 4, 2019, with the same four-day availability, but increased her push and pull limit to 50 pounds. *Id.* Ex. 11, at 50–52; Kunkel Decl., Ex. D, at 7, ECF No. 44. On January 1, 2020, Plaintiff informed Costco that she filed a discrimination complaint with BOLI. Owens Decl., Ex. 11, at 53. In a letter dated March 9, 2020, Costco determined that Plaintiff was unable to perform the essential functions of the refund cashier position due to her limited four-day availability and informed Plaintiff that she will be terminated because she had exhausted her available leave. *Id.* at 57–58. Costco finalized Plaintiff's termination in a letter dated March 30, 2020. Watkins Decl., Ex. 16.

Plaintiff now brings this action, alleging that Costco discriminated against her because of her disability, failed to accommodate her, and retaliated against her.

## LEGAL STANDARD

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56. An issue is "genuine" if a reasonable jury could return a verdict in favor of the non-moving party. *Rivera v. Phillip Morris, Inc.*, 395 F.3d 1142, 1146 (9th Cir. 2005) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). A fact is "material" if it could affect the outcome of the case. *Id.* The Court reviews evidence and draws inferences in the light most favorable to the non-moving party. *Miller v. Glenn Miller Prods., Inc.*, 454 F.3d 975, 988 (9th

Cir. 2006). When the moving party has met its burden, the non-moving party must present "specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986) (quoting Fed. R. Civ. P. 56(e)).

**DISCUSSION**

Plaintiff brings claims for disability discrimination, retaliation, and aiding and abetting under the ADA and Oregon law.[3] The Court addresses each in turn.

## I. Disability Discrimination

Title I of the ADA makes it unlawful for an employer to discriminate against "a qualified individual on the basis of disability" regarding the hiring, advancement, or discharge of employees, as well as "other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). Plaintiff seeks to establish disability discrimination under two theories: failure to accommodate and disparate treatment.[4] As a threshold issue, Plaintiff must first establish that she is a "qualified individual" under the ADA, meaning someone "who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." *Id.* § 12111(8). Costco contends that Plaintiff is not a qualified individual because she cannot perform the essential functions of her job. Defs.' Mot. Summ. J. 19–20, ECF No. 41.

### A. Qualified Individual/Essential Function

Costco claims that being available to work five days per week was an essential function of Plaintiff's job as a part-time refund cashier in Costco's membership department. *Id.* at 20. Due

---

[3] Oregon law is patterned after the ADA. *See* Or. Rev. Stat. § 659A.139(1) ("ORS 659A.103 to 659A.144 shall be construed to the extent possible in a manner that is consistent with any similar provisions of the federal Americans with Disabilities Act of 1990."). The Court therefore addresses Plaintiff's federal and state disability discrimination claims together.

[4] Plaintiff concedes that she cannot establish a hostile work environment claim. Pl.'s Resp. 39. Summary judgment is therefore granted on that claim. Plaintiff also asserts that Costco failed to engage in the interactive process. This claim is discussed as part of Plaintiff's reasonable accommodation claim.

to Plaintiff's restrictions limiting her to work only four days per week, Costco claims Plaintiff was unable to perform an essential function of her job.

Generally, "[t]he term essential functions means the fundamental job duties of the employment position the individual with a disability holds or desires." 29 C.F.R. § 1630.2(n)(1). A job function may be considered essential if "the reason the position exists is to perform that function," there are a "limited number of employees" who can perform that job function, or the function is "highly specialized" so that the employee is hired for her "expertise or ability to perform that particular function." *Id.* § 1630.2(n)(2). Evidence of whether a particular function is essential includes, but is not limited to:

> (i) The employer's judgment as to which functions are essential;
> (ii) Written job descriptions prepared before advertising or interviewing applicants for the job;
> (iii) The amount of time spent on the job performing the function;
> (iv) The consequences of not requiring the incumbent to perform the function;
> (v) The terms of a collective bargaining agreement;
> (vi) The work experience of past incumbents in the job; and/or
> (vii) The current work experience of incumbents in similar jobs.

*Id.* § 1630.2(n)(3). The employer bears the burden of production in establishing what job functions are essential. *Samper v. Providence St. Vincent Med. Ctr.*, 675 F.3d 1233, 1237 (9th Cir. 2012). To meet its burden of production, Costco "'must clearly set forth, through the introduction of admissible evidence, reasons for its actions which, *if believed by the trier of fact*, would support a finding' favorable to the defendant—in this case, that compliance with the [scheduling] policy is an essential function of the job." *Id.* (quoting *St. Mary's Ctr. v. Hicks*, 509 U.S. 502, 507 (1993)).

In support of its argument, Costco cites to multiple cases where courts found regular attendance and particular schedules an essential function of the plaintiff's job. Defs.' Mot. Summ. J. 21–22. For example, in *Samper*, the Ninth Circuit held that regular on-site attendance

was an essential function of a neo-natal nursing position. 675 F.3d at 1235. There, the plaintiff

regularly exceeded the number of unplanned absences permitted by her employer's policy, which

allowed up to five unplanned absences per year. *Id.* The court explained that the plaintiff's

"regular, predictable presence to perform specialized, life-saving work in a hospital context" was

essential. *Id.* at 1238. The plaintiff's employer submitted evidence of the written job description,

which listed "Attendance" and "Punctuality" as essential functions and provided that the

employee must "[d]emonstrate[] performance by adhering to established policies and procedure

and exhibiting the defined characteristics associated with attendance and punctuality." *Id.*

(alterations in original). Additionally, the plaintiff's former supervisor explained that finding

replacements for a NICU nurse with specialized training was very difficult, especially for

unscheduled absences, and that understaffing compromised patient care. *Id.*

The Court finds that disputed issues of material fact preclude summary judgment on the

essential function issue in this case. First, regarding the employer's judgment as to which

functions are essential, Defendant Watkins explained that because the membership department is

small and the refund cashier is a "specifically trained" position, it is more challenging to account

for understaffing in the membership department. Watkins Decl. ¶ 15, 17–20. Costco therefore

relies on the flexible schedules of part-time employees in order to help cover scheduling gaps

when other employees are out or during seasonal times when the warehouse is busier. *Id.* ¶ 8–13.

Plaintiff, however, refers to the testimony of other Costco managers and supervisors who

explained that Costco regularly cross-trained employees from other departments as refund

cashiers, and those employees frequently picked up shifts in the membership department to help

fill gaps in the schedule. *See* Owens Decl., Ex. 1, at 40, 53–54; Ex. 5, at 29–30; Ex. 6, at 39–40,

103, 105–08. The other managers also testified that they were able to find extra support in the

membership department when needed and that the department was not understaffed. *See* Owens Decl., Ex. 1, at 40, 53–54; Ex. 5, at 29–30; Ex. 6, at 48–50, 111–12. Plaintiff has sufficiently rebutted Costco's evidence on this issue.

Costco relies on its written employment agreement as evidence in support of its argument, which states that part-time employees must have "flexibility in the days and hours [they] are available to work." Owens Decl. Ex. 11, at 83.[5] However, Costco cannot point to any written document confirming its "policy" that part-time employees must be available to work five days per week. *See* Watkins Decl. Ex. 1, at 1–4; Owens Decl., Ex. 5, at 24, Ex. 7, at 15. As to evidence concerning the consequences of not requiring Plaintiff to be available five days per week, Watkins identified challenges with responding to fluctuating demand and absences of other employees, short staffing, longer lines, and a disruption in the team dynamic. Watkins Decl. ¶ 18–19, 21. His testimony, however, is rebutted by the testimony of other managers and supervisors who scheduled Plaintiff and said there were never any employee or customer complaints that could be attributed to Plaintiff's limited availability, they were able to find extra support in membership when needed, and membership was not understaffed. Owens Decl., Ex. 1, at 40, 53–54; Ex. 5, at 29–30; Ex. 6, at 48–52, 111–12. Further, Costco submitted no specific evidence of any financial hardship resulting from Plaintiff's limited availability, such as having to close certain operations in the membership department or pay overtime to other employees.

Finally, Plaintiff sufficiently rebutted Costco's evidence concerning the experiences of past and current refund cashiers. Plaintiff notes that Costco did not require her to work five days per week from 2015 to 2017, and points to at least one other part-time refund cashier in the membership department, Lori Melton, who regularly did not work five days per week. Owens

---

[5] Costco does not have a job description for the part-time refund cashier position. Defs.' Mot. 23.

Decl., Ex. 1, at 46–47; Ex. 4, at 17–18; Ex. 6, at 69–70, 104; Ex. 7, at 17–21; Ex. 8, at 178–79, 195–96. Additionally, the evidence suggests that Costco has since changed its policy to no longer require five-day availability for part-time employees. Owens Decl., Ex. 1, at 32–37. Costco responds that the recent change in policy is irrelevant, and that after its business needs changed in 2017, Costco required all part-time employees in the membership department, including Plaintiff and Ms. Melton, to be available five days a week. Defs.' Reply 6–8, ECF No. 60.

Costco is free to argue its version of the facts to a jury. For summary judgment purposes, Plaintiff has sufficiently raised several triable issues of fact regarding whether five-day availability was an essential function of her part-time refund cashier position. Additionally, Costco's reliance on *Samper* and other cases where courts found regular attendance and schedules an essential function is unavailing here. The plaintiff in *Samper*, for instance, worked in a specialized role that was difficult to find replacements for on short notice, and where her repeated unplanned absences placed NICU patients at risk. Here, the evidence suggests that Costco was regularly able to find employees to cover shifts in the membership department, and other managers were unable to identify any specific negative impacts on customers or other membership employees resulting from Plaintiff's limited availability.

Because there are disputed issues of material fact, summary judgment on the essential function issue is denied. The Court will next address Plaintiff's failure to accommodate and disparate treatment claims.

### B. Failure to Accommodate

Plaintiff alleges that Costco failed to offer her a reasonable accommodation and failed to engage in the interactive process as required by the ADA. Pl.'s Resp. 31–35. Costco raises the

threshold issue that Plaintiff's claim is time barred, and also argues that Plaintiff's claim fails on the merits. The Court first addresses the timeliness issue.

### 1. Timeliness of Failure to Accommodate Claim

A plaintiff has 300 days after an alleged discriminatory action to file a charge under the ADA and one year to file a charge under Oregon law. *See* 42 U.S.C. § 2000e-5(e)(1); Or. Rev. Stat. § 659A.875(1)(a). Plaintiff contends that, because she filed her BOLI complaint on April 29, 2020, "under federal law her claims are protected at least as far back as July 4, 2019 (300 days), and under state law as far back as April 29, 2019 (one year)." Pl.'s Resp. 35–36; Braa Decl. Ex. 1, ECF No. 54. Plaintiff claims that Costco's March 9, 2020 accommodation denial falls within the statute of limitations period. Pl.'s Resp. 38.[6] Costco argues that the statute of limitations began to run when it first denied Plaintiff's request for a four-day work week in 2017, and that each subsequent denial of the same request was merely the "inevitable consequence" of the 2017 denial. Defs.' Mot. 35. To determine when Plaintiff's failure to accommodate claim accrued, the Court must evaluate whether Costco's March 2020 accommodation denial was a discrete, discriminatory act or merely the inevitable consequence of Costco's prior 2017 denial. *See Ervine v. Desert View Reg'l Med. Ctr. Holdings, LLC*, 753 F.3d 862, 870 (9th Cir. 2014).

A discrete, discriminatory act is "independently wrongful" and does "not rely on any acts that occurred before the statute of limitations period to establish a violation." *Pouncil v. Tilton*, 704 F.3d 568, 581 (9th Cir. 2012). In *Pouncil*, an inmate was denied a conjugal visit in 2002 based on a prison regulation that prohibited family visits for people with life sentences. *Id.* at

---

[6] Plaintiff claims that Costco denied Plaintiff's accommodation requests multiple times in 2019 and 2020. Pl.'s Resp. 36–37. A closer review of the record reveals that the August and November 2019 letters that Plaintiff relies on as separate denials were mere summaries of Costco's earlier denials that occurred outside of the statutory period. Those letters did not deny any new accommodation request made by Plaintiff. Plaintiff therefore can only rely on the March 9, 2020 letter where Costco denied her accommodation request based on new restrictions from December 2019 as the basis for her failure to accommodate claim.

570. The inmate again requested a conjugal visit in 2008 and was denied under the same regulation. *Id.* The Ninth Circuit considered the denial of the 2008 conjugal visit a discrete, discriminatory action because it did not rely on the 2002 denial "to establish a necessary element of" the inmate's claims. *Id.* at 581. In other words, "the 2008 denial relied on a new application of the regulation to a new request for a conjugal visit[;] it did not rely on the 2002 denial as barring all subsequent requests for conjugal visits." *Id.* The inmate's claim based on the 2008 denial was therefore timely. *Id.* at 583.

On the other hand, a new statute of limitations does not begin to run by an action that is just the inevitable consequence of an earlier, time barred discriminatory action. *See Ervine*, 753 F.3d at 870. In *Delaware State College v. Ricks*, 449 U.S. 250, 252–54 (1980), a college denied a professor a tenured position and instead offered him a "terminal" contract to teach for one additional year. The offer, which the professor accepted, specified that the professor's employment would end after the expiration of one year. *Id.* at 253–54. The professor later challenged both the denial of tenure and his termination, arguing that his claim accrued upon his termination. *Id.* at 257. The college maintained that the professor's claim accrued upon the college's original denial of tenure. *Id.* The Supreme Court determined that the professor's termination was merely the "delayed, but inevitable, consequence of the denial of tenure." *Id.* at 257–58. The court explained that the only alleged discrimination occurred when the tenure decision was made, even though the effects of the denial of tenure did not occur until a year later. *Id.* at 258.

In 2017, Costco declined to accommodate Plaintiff's permanent medical restrictions of only working four days per week, six hours per day, and no more than two eight-hour shifts per month. Owens Decl., Ex. 11, at 32–36. Costco explained that, based on its business needs, there

were certain times when it would need Plaintiff to work more than four days per week, such as to

help cover when other employees were gone. *Id.* at 33. Costco noted that it had been a challenge

to provide Plaintiff three days off per a week in a smaller department, and that the District

directed that part-time employees be scheduled five days per week. *Id.* at 33, 36. Plaintiff then

provided updated restrictions from September 2018 and January 2019, both of which included

the same four-day per week scheduling limit, as well as a 19-pound push/pull limit. Watkins

Decl., Exs. 10–12. In April 2019, Watkins explained that because her restrictions from both

September 2018 and January 2019 do not allow pushing and pulling more than 19 pounds,

Plaintiff was unable to perform the essential functions of the refund cashier position. *Id.* Ex. 13.

Plaintiff's final set of restrictions from December 2019 removed the 19-pound push/pull limit but

kept the same four-day availability. Owens Decl. Ex. 11, at 50–52; Kunkel Decl., Ex. D, at 7.

Costco determined in its March 2020 denial that Plaintiff was unable to perform the essential

functions of her job due to her limited availability. Owens Decl. Ex. 11, at 57.

The Court finds that Costco's March 2020 accommodation denial was a discrete act

rather than the inevitable consequence of its 2017 denial. Plaintiff here is similar to the plaintiff

in *Pouncil*, who submitted the same request for a conjugal visit in 2002 and 2008. The 2008

denial was a discrete act because it did not rely on the 2002 denial as barring all subsequent

requests for a conjugal visit. Similarly, Costco's 2017 denial did not bar all subsequent requests

for a four-day per week schedule. Costco admits its 2017 denial was based on changing business

needs. Owens Decl. Ex. 11, at 33. It was not unreasonable for Plaintiff to believe that more than

two years later, Costco's business needs may have changed again allowing her to work only four

days a week. Indeed, the evidence suggests that Costco recently changed its policy to no longer

require five-day availability for part-time employees. *Id.* Ex. 1, at 32–37. Additionally, in a letter

from November 2019, Costco expressly told Plaintiff that her limited availability was <u>not</u> the basis for her accommodation denials, and instead only the 19-pound weight restriction could not be accommodated. *Id.* Ex. 12, at 16–17. It was not futile for Plaintiff to submit a new accommodation request more than two years after Costco's first denial, and after Costco continued to change its reasoning for denying Plaintiff's accommodation requests. Costco frames the evidence as Plaintiff repeatedly seeking reconsideration of Costco's singular decision in 2017. Defs.' Mot. 38–39. But the record instead reflects that Plaintiff's medical restrictions continued to evolve, resulting in independent accommodation requests and denials by Costco.

Because Costco's March 2020 accommodation denial occurred within the statute of limitations period, Plaintiff's failure to accommodate claim is not time barred.

### 2. Merits of Failure to Accommodate Claim

The ADA requires "reasonable accommodations of employees' disabilities by their employers." *Barnett v. U.S. Air, Inc.*, 228 F.3d 1105, 1110 (9th Cir. 2000) (en banc), *vacated on other grounds sub nom. U.S. Airways, Inc. v. Barnett*, 535 U.S. 391 (2002). To establish a prima facie case for failure to accommodate under the ADA, a plaintiff must show that (1) she is a qualified individual who can perform the essential functions of her job with or without accommodation, (2) her employer received adequate notice of her desire for accommodation, and (3) a reasonable accommodation was available that would not have placed an undue hardship on the employer's business. *See Snapp v. United Transp. Union*, 889 F.3d 1088, 1095 (9th Cir. 2018). Upon notice of a request for accommodation, "an employer has a mandatory obligation 'to engage in an interactive process with employees in order to identify and implement appropriate reasonable accommodations.'" *Anthony v. Trax Int'l Corp.*, 955 F.3d 1123, 1134 (9th Cir. 2020) (quoting *Barnett*, 228 F.3d at 1111). Reasonable accommodations can include "job

restructuring, part-time or modified work schedules, [or] reassignment to a vacant position." 42
U.S.C. § 12111(9)(B).

A plaintiff bears the burden of "showing the existence of a reasonable accommodation
that would have enabled him to perform the essential functions of an available job." *Dark v.
Curry County*, 451 F.3d 1078, 1088 (9th Cir. 2006). An employer, in turn, bears the burden of
demonstrating that the proposed accommodation will cause an undue hardship. *Barnett*, 228 F.3d
at 1113. Generally, a proposed accommodation is an undue hardship if it requires "significant
difficulty or expense." 42 U.S.C. § 12111(10)(A). Factors to be considered include the nature
and cost of the accommodation, the overall financial resources of the facility and covered entity,
the size and number of persons employed at the facility and covered entity, and the impact of the
accommodation on the facility's operations. *Id.* § 12111(10)(B).

Plaintiff contends that Costco could have reasonably accommodated her updated
scheduling restrictions from December 2019 by allowing her to work four days per week with
six-hour shifts per day in her existing job as a part-time refund cashier. Pl.'s Resp. 31–32. Costco
responds that Plaintiff's claim fails because it offered Plaintiff several reasonable
accommodations. Defs.' Mot. 39. Specifically, Costco asserts that Plaintiff is not entitled to the
accommodation of her choice, and Costco offered Plaintiff reassignment to other positions in the
warehouse as a reasonable accommodation. *Id.* at 39–40.

The Equal Employment Opportunity Commission ("EEOC") provides guidance on
reasonable accommodations and undue hardship under the ADA. It cautions that "[r]eassignment
is the reasonable accommodation of last resort," and instructs employers to "first consider those
accommodations that would enable an employee to remain in his/her current position." EEOC
Enforcement Guidance: Reasonable Accommodation and Undue Hardship Under the ADA, 2002

WL 31994335, at *20; *see also Reynoso v. Cnty. of Ventura*, No. 19-cv-05687, 2022 U.S. Dist. LEXIS, at *38 (C.D. Cal. Mar. 8, 2022) (citing the same).

In rejecting Plaintiff's accommodation request for a four-day work week, Costco relies entirely on the notion that five-day per week availability was an essential function of Plaintiff's job, and Costco therefore could not accommodate Plaintiff's request for limited availability. *See* Defs.' Mot. 39–41. Accordingly, Costco contends that its offers of reassignment to other jobs in the warehouse were reasonable accommodations. As discussed above, disputed issues of fact preclude resolving the essential function issue at summary judgment. If five-day availability was in fact <u>not</u> an essential function of Plaintiff's job, then Plaintiff has demonstrated that her requested four-day scheduling accommodation, which would have allowed her to stay in her same position, was reasonable. In response, Costco failed to argue that Plaintiff's proposed accommodation would have caused undue hardship. *See* Defs.' Mot. 39–41. And the evidence Costco submitted in support of its essential function argument regarding the negative consequences of Plaintiff's limited schedule does not show "significant difficulty or expense." The fact that Costco offered reassignment is irrelevant to whether Costco could have reasonably accommodated Plaintiff in her refund cashier position. Further, Costco did not offer Plaintiff any sort of accommodation after she submitted updated medical restrictions in December 2019. Instead, Costco terminated her employment.

Because there are disputed issues of fact regarding whether Costco reasonably accommodated Plaintiff, summary judgment on Plaintiff's failure to accommodate claim is denied.[7]

---

[7] The Court finds that disputed issues of fact also preclude summary judgment on Plaintiff's failure to engage in the interactive process claim. *See Snapp*, 889 F.3d at 1095 ("[T]here exists no stand-alone claim for failing to engage in the interactive process. Rather, discrimination results from denying an available and reasonable accommodation."). Namely, whether Costco attempted in good faith to "identify and implement appropriate reasonable

### C. Disparate Treatment Claim

To establish a prima facie case of disparate treatment based on disability, a plaintiff must show (1) that she is a disabled person within the meaning of the ADA, (2) that she is qualified with or without reasonable accommodation to perform the essential functions of the job, and (3) that she suffered an adverse employment action because of her disability. *See Kennedy v. Applause, Inc.*, 90 F.3d 1477, 1481 (9th Cir. 1996). For purposes of causation, "[t]he link between the disability and termination is particularly strong where it is the employer's failure to reasonably accommodate a known disability that leads to discharge for performance inadequacies resulting from that disability." *Humphrey v. Mem'l Hosps. Ass'n*, 239 F.3d 1128, 1140 (9th Cir. 2001). If the plaintiff establishes a prima facie case, the burden shifts to the employer to demonstrate a legitimate, non-discriminatory reason for the adverse action. *See Curley v. City of N. Las Vegas*, 772 F.3d 629, 632 (9th Cir. 2014). The plaintiff must then demonstrate that the employer's reason was pretextual, which she may do "either directly by persuading the court that a discriminatory reason likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence." *Snead v. Metro. Prop. & Cas. Ins. Co.*, 237 F.3d 1080, 1093–94 (9th Cir. 2001) (quoting *Texas Dept. of Cmty. Affairs v. Burdine*, 450 U.S. 248, 256 (1981)).

Costco argues Plaintiff has no evidence that her disability motivated Costco to terminate her employment. Defs.' Mot. 30. Plaintiff submits that Costco terminated her employment because of Costco's alleged inability to accommodate Plaintiff's disability, which is sufficient to

---

accommodations" when it repeatedly denied Plaintiff's arguably reasonable accommodation requests is a question of fact for the jury. *See Anthony*, 955 F.3d at 1134; *see also Barnett*, 228 F.3d at 1116 ("[E]mployers[] who fail to engage in the interactive process in good faith[] face liability for the remedies imposed by the statute if a reasonable accommodation would have been possible.").

prove her prima facie case of disparate treatment. Pl.'s Resp. 40. The Court agrees that Plaintiff has presented sufficient evidence to preclude summary judgment.

The Court recognizes that, conceptually, disparate treatment claims and failure to accommodate claims under the ADA are distinct. *See Dunlap v. Liberty Natural Prods.*, 878 F.3d 794, 798 (9th Cir. 2017). However, in a case like this one, where the employer has allegedly failed to accommodate an employee and that failure to accommodate led to the employee's eventual termination, the two claims rise and fall together. *See Humphrey*, 239 F.3d at 139; *see also Capote v. CSK Auto, Inc.*, No. 12-cv-02958, 2014 U.S. Dist. LEXIS 56030, at * 21–22 (N.D. Cal. Apr. 21, 2014) ("[I]n a reasonable accommodation case where an adverse employment action is at issue, the disability discrimination and reasonable accommodation analyses merge . . . and the disability discrimination claim depends on the viability of the reasonable accommodation claim coupled with a showing of an adverse employment action."). The Ninth Circuit has explained that "from a practical standpoint," failure to accommodate and disparate treatment claims under the ADA are often the same because "the consequence of the failure to accommodate is . . . frequently an unlawful termination." *Humphrey*, 239 F.3d at 1139.

Here, Plaintiff submitted sufficient evidence to create triable issues of fact as to whether Costco terminated Plaintiff because of her disability. In its March 9, 2020 letter to Plaintiff, Costco denied Plaintiff's most recent accommodation request seeking a four-day work week and terminated her employment. Owens Decl. Ex. 11, at 57–58. Costco stated that "[i]n light of the fact that [Plaintiff] remains unable to return to work either with or without accommodation given the most recent version of [her] work restrictions, it is appropriate at this time to separate [Plaintiff's] employment." *Id.* at 58. In its March 30 letter finalizing Plaintiff's termination, Costco again explained its determination to "separate [Plaintiff's] employment given that [she

was] unable to return to work, either with or without accommodation, and [had] exhausted [her] available leave of absence." Watkins Decl. Ex. 16, at 1.

Construing the evidence in the light most favorable to Plaintiff, Costco all but admits that it terminated Plaintiff due to its alleged inability to accommodate Plaintiff's disability. That is sufficient to establish Plaintiff's prima facie case and create a triable issue of fact as to whether Costco terminated Plaintiff because of her disability. *See Humphrey*, 239 F.3d at 1139–40. A jury could reasonably find the necessary causal link between Plaintiff's termination and her disability. Namely, that rather than reasonably accommodate Plaintiff's disability in her refund cashier position, Costco improperly terminated her instead.

Costco submits that its legitimate, non-discriminatory reason for ending Plaintiff's employment was that Plaintiff exceeded Costco's one-year leave policy. Defs.' Mot. 33. The Court, however, is not convinced that Costco's reason for Plaintiff's termination is unrelated to her disability. As the Ninth Circuit explained, "conduct resulting from a disability is considered to be part of the disability, rather than a separate basis for termination." *Humphrey*, 239 F.3d at 1139–40. Construing the facts in the light most favorable to Plaintiff, the evidence suggests that Plaintiff only went on leave and remained for that long because Costco repeatedly refused to accommodate Plaintiff's scheduling restrictions in her refund cashier position. As discussed above, whether Costco was correct in refusing Plaintiff's accommodation requests is a question for the jury. In addition to finding that Costco failed to accommodate Plaintiff's disability, a jury could reasonably find that Costco then terminated Plaintiff because of that failure to accommodate.

Even if Costco's reason is a legitimate, non-discriminatory reason, Plaintiff has sufficiently raised triable issues of fact regarding whether Costco's reason is pretextual. *See*

*Snead*, 237 F.3d at 1094 ("[A] disparate treatment plaintiff can survive summary judgment without producing any evidence of discrimination beyond that constituting her prima facie case, if that evidence raises a genuine issue of material fact regarding the truth of the employer's proffered reasons."). In addition to the above evidence, which suggests that Plaintiff only exceeded Costco's leave policy because of Costco's refusal to accommodate Plaintiff's disability in her existing position, Plaintiff points out that she exceeded Costco's one-year leave policy in July 2018. *See* Stover Decl. ¶ 18, ECF No. 45. Yet Costco did not terminate Plaintiff until over a year and a half later. Plaintiff has sufficiently demonstrated that Costco's proffered reason for her termination—that she exceeded Costco's one-year leave policy—is unworthy of credence. *See Snead*, 237 F.3d, at 1093–94.

Because Plaintiff has raised triable issues of fact concerning whether Costco terminated Plaintiff because of her disability, summary judgment is denied on Plaintiff's disparate treatment claim.[8]

### III. Retaliation

Plaintiff brings three claims for retaliation under Oregon law based on disability status (Or. Rev. Stat. § 659A.109), whistleblower status (Or. Rev. Stat. § 659A.199), and for initiating a civil proceeding (Or. Rev. Stat. § 659A.230). Pl.'s Resp. 49. To establish a prima facie case of retaliation, a plaintiff must show "(1) involvement in a protected activity, (2) an adverse employment action, and (3) a causal link between the two." *Brooks v. City of San Mateo*, 229 F.3d 917, 928 (9th Cir. 2000). If a plaintiff establishes a prima facie case, "the burden of production shifts to the employer to present legitimate reasons for the adverse employment

---

[8] The Court does not address the sufficiency of the remaining evidence Plaintiff identified in support of her disparate treatment claim. *See* Pl.'s Resp. 41–43.

action." *Id.* "Once the employer carries this burden, plaintiff must demonstrate a genuine issue of material fact as to whether the reason advanced by the employer was a pretext." *Id.*

Plaintiff has established a prima facie case of retaliation. Plaintiff engaged in protected activities within the relevant statutory timeframe when she internally reported discrimination to Costco, requested a reasonable accommodation in December 2019,[9] and informed Costco that she contacted BOLI regarding a complaints of disability discrimination in January 2020. Owens Decl., Ex. 11, at 53. Costco terminated Plaintiff in March 2020. Causation can be inferred from the close temporal proximity between Plaintiff's protected activities and her termination, which occurred only two and three months later. *See Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1065 (9th Cir. 2002) (finding an eighteen-month lapse between protected activity and adverse employment action too long to establish causation). Costco's non-retaliatory reason for terminating Plaintiff is that she exceeded her available leave. Defs.' Mot. 33.

As with her disparate treatment claim, the Court finds that Plaintiff has raised triable issues of fact regarding whether Costco's non-retaliatory reason for terminating Plaintiff was pretextual. The Court reiterates that Costco's proffered reason for terminating Plaintiff—that she exceeded Costco's leave policy—is not entirely unrelated to Plaintiff's disability and her request for accommodation. The evidence construed favorably to Plaintiff suggests that Costco terminated Plaintiff because of its alleged inability to accommodate Plaintiff's disability, rather than her exceeding Costco's leave policy. Additionally, Costco provides no explanation for why Costco allowed Plaintiff to remain on leave for another year and a half after Plaintiff exceeded the one-year leave policy before finally terminating her. In fact, Costco repeatedly warned Plaintiff that it "may be appropriate to separate [her] employment" if she remained on leave, but

---

[9] Requesting a reasonable accommodation is a protected activity. *See Coons v. Sec'y of U.S. Dep't of Treasury*, 383 F.3d 879, 887 (9th Cir. 2004).

only followed through on that warning until a few months after Plaintiff sought a reasonable accommodation and informed Costco of her contact with BOLI.[10] Such evidence is sufficient to show that Costco's proffered non-retaliatory reason is unworthy of credence.

Plaintiff has presented sufficient evidence from which a reasonable jury could conclude that Costco terminated Plaintiff because she engaged in protected activities, including internally reporting discrimination to Costco, requesting a reasonable accommodation in December 2019, and informing Costco that she contacted BOLI in January 2020, rather than because she exceeded Costco's leave policy.

### III. Claims against Individual Defendants

Plaintiff's final claim is for aiding and abetting discrimination against individual Defendants Watkins, Horniman, and Bolves. Under Oregon law, it is unlawful for "any person, whether an employer or an employee, to aid, abet, incite, compel or coerce the doing of any of the acts forbidden under this chapter or to attempt to do so." Or. Rev. Stat. § 659A.030(1)(g). Plaintiff alleges the individual Defendants each took actions to aid and abet Costco's unlawful discrimination. Pl.'s Resp. 55. Costco argues that Plaintiff's claim fails because individuals "cannot be held liable for aiding and abetting [their employer] [if] their actions never went beyond their official duties." Defs.' Mot. 48 (quoting *Torres v. Nat'l Frozen Foods Corp.*, No. 20-cv-01680, 2021 WL 1740245, at *9 (D. Or. May 3, 2021)).

The Oregon Court of Appeals recently interpreted the somewhat ambiguous language of section 659A.030(1)(g), explaining that "[a]nyone qualifying as a 'person' under ORS 659A.001(9) may be an aider or abettor of an unlawful employment practice in a way that

---

[10] The Court recognizes that Costco's letter in November 2019 informed Plaintiff that it would be appropriate to separate her employment at that time. But instead of terminating her, Costco gave Plaintiff the opportunity to resign. Costco still did not follow through on its termination until March 2020, soon after Plaintiff engaged in protected activities. The November 2019 letter therefore does not refute Plaintiff's evidence of pretext.

subjects them liability under ORS 659A.030(1)(g)." *Hernandez v. Catholic Health Initiatives*, 490 P.3d 166, 172 (Or. Ct. App. 2021). The Court of Appeals again affirmed this interpretation last year, explaining that "'any person' includes a business-entity employer's principal decision-maker directing the entity." *Allison v. Dolich*, 518 P.3d 591, 594 (Or. Ct. App. 2022). The court dealt with the precise issue of "whether the legislature intended to impose aider or abettor liability on a person who undertakes to make decisions on behalf of a business-entity employer, resulting in the entity's liability under ORS chapter 659A." *Id.* at 594. The court determined that the individual defendants, whether "acting in their personal capacities or on behalf of" the business entity, were "persons" who assisted the entity "by making the decisions that enabled the violations," resulting in aider and abettor liability under section 659A.030(1)(g). *Id.* at 595.

Under the clear holdings of *Hernandez* and *Allison*, the individual Defendants here may be held liable for aiding and abetting Costco's alleged discrimination. Though several Oregon district courts, including this Court, have previously found otherwise, this Court is bound by the recent holdings of the Oregon Court of Appeals on this issue. *See In re Kirkland*, 915 F.2d 1236, 1239 (9th Cir. 1990) ("[I]n the absence of convincing evidence that the highest court of the state would decide differently, . . . a federal court is obligated to follow the decisions of the state's intermediate courts."). Defendants submitted no convincing evidence that the Oregon Supreme Court would decide differently. *See Ryman v. Sears, Roebuck & Co.*, 505 F.3d 993, 995 n.1 (9th Cir. 2007) ("The opinions of other federal judges on a question of state law do not constitute 'convincing evidence that the state supreme court would decide [an issue] differently,' . . . nor do those opinions contain any relevant 'convincing evidence.'").

Costco finally argues that the claims against Defendants Horniman and Bolves cannot go forward on the merits because there is no evidence of discriminatory animus toward Plaintiff nor

any evidence that either Defendant influenced the decision to deny Plaintiff's accommodation. Defs.' Reply 32. The Court disagrees.

The record reflects that Defendants Watkins, Horniman, and Bolves each played a role in Plaintiff's reasonable accommodation process as well as her termination. Watkins was repeatedly involved in the accommodation process, and his decision that Plaintiff could not perform the essential functions of her refund cashier position informed Costco's decision to terminate Plaintiff. Horniman signed letters to Plaintiff in November 2019 and March 2020 regarding Costco's accommodation denials and confirming Plaintiff's termination. Owens Decl. Ex. 11, at 46–49, 57–58; Watkins Decl. Ex. 16. Bolves sent similar letters to Plaintiff regarding Costco's accommodation denials in May and September 2019. Owens Decl. Ex. 11, at 38–39, 42–45. Summary judgment on Plaintiff's aiding and abetting claims is therefore denied.

## CONCLUSION

For the above reasons, Defendants' Motion for Summary Judgment, ECF No. 41, is DENIED.[11]

---

[11] Costco raises the final argument that if any of Plaintiff's claims survive, her damages should be limited because (1) Plaintiff failed to mitigate her damages and (2) Costco engaged in the accommodation process in good faith. Defs.' Mot. 49. Both involve disputed issues of fact for the jury. Costco claims that Plaintiff refused its offers of reassignment, failed to respond to multiple job postings, and failed to look for other employment to mitigate her damages. However, as explained above, a jury could find that Costco failed to accommodate Plaintiff's disability in her role as a refund cashier, and therefore Costco's offers of reassignment at that time were not reasonable. Additionally, though Costco contends that it sent Plaintiff various open positions in the warehouse while she was on leave, Plaintiff points out that the job postings were completely untailored to her, provided no information about the duties of the position, and it was unclear whether she qualified for the jobs or whether her disability could be accommodated in those roles. *See* Stover Decl. Ex. 10. There are disputed issues of fact concerning the reasonableness of both Costco and Plaintiff's efforts during the accommodation process. Accordingly, Costco has not met its burden at the summary judgment stage of "demonstrating that reasonable efforts to find employment were not made" by Plaintiff. *See Haeuser v. Dep't of Law, Gov't of Guam*, 368 F.3d 1091, 1100 (9th Cir. 2004). Additionally, as explained above, whether Costco reasonably accommodated Plaintiff and engaged in the interactive process in good faith involves disputed questions of fact for the jury. For these reasons, summary judgment is denied on the issue of damages.

IT IS SO ORDERED.

       DATED this 8th day of August, 2023.

                \_\_\_s/Michael J. McShane_____

                    **Michael J. McShane**
                  **United States District Judge**